UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| GREAT AMERICAN ALLIANCE INSURANCE COMPANY, An Ohio Corporation, <br><br> Plaintiff, <br><br> v. <br><br> GRISHAM FARM PRODUCTS, INC., A Missouri Corporation, <br><br> Serve: Registered Agent <br>　　　　Lexie R. Grisham <br>　　　　7364 Newkirk Road <br>　　　　Mountain Grove, Missouri 65711 <br><br> Defendant. | Case No.: 6:15-cv-3355 <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Great American Alliance Insurance Company ("GAAL"), by and through counsel, for its Complaint, states and alleges as follows:

## PARTIES

1. GAAL is a corporation duly organized and existing under the laws of the State of Ohio, with its principal place of business in Cincinnati, Ohio, and authorized to do business in the State of Missouri. GAAL is primarily engaged in the business of property and casualty insurance, focusing on specialized commercial products.

2. Defendant Grisham Farm Products, Inc. ("Grisham") is a corporation duly organized and existing under the laws of the State of Missouri, with its principal place of business in Mountain Grove, Missouri, and authorized to do business in the State of Missouri.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. § 1332, in that GAAL, a citizen of the State of Ohio, is of diverse citizenship from Grisham, a citizen of the State of Missouri, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Venue is appropriate in this judicial district and division pursuant to 28 U.S.C. § 1391(b) and Local Rule 3.1(a) because Grisham resides and engages in business in Wright County, Missouri, and a substantial portion of the events or omissions giving rise to this controversy occurred within this judicial district and division.

## ALLEGATIONS APPLICABLE TO ALL COUNTS

5. On or about November 1, 2013, GAAL issued to Grisham a large-deductible workers' compensation and employer's liability insurance policy with a term of one year, ending November 1, 2014 ("Insurance Policy"). In exchange for GAAL's agreement to cover claims of worker bodily injury by accident or by disease, Grisham agreed to pay GAAL premium, and to reimburse GAAL for payments on claims falling within the per accident deductible specified in the Insurance Policy, subject to the aggregate limit specified in the Insurance Policy. A copy of the Insurance Policy is attached to this Complaint and incorporated by reference as Exhibit 1.

6. The Insurance Policy issued to Grisham was auditable, meaning that at the conclusion of the policy term, a payroll audit of Grisham would be conducted, and the estimated premium and estimated aggregate limit listed in the Insurance Policy could be revised according to the results of that audit. (Exhibit 1).

7. Under the terms of the Insurance Policy, Grisham agreed to pay, at the date of billing, any amount by which the revised premium resulting from the audit exceeded the

estimated premium. Grisham also agreed to reimburse GAAL, within 30 days of the date of billing, for claims GAAL paid within the per accident deductible, up to the aggregate limit. (Exhibit 1).

8. Specifically, the Insurance Policy provided, in relevant part:

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY POLICY**
**LARGE DEDUCTIBLE PROGRAM ENDORSEMENT**

**SCHEDULE**

| | | |
|---|---|---|
| Per Accident Deductible Amount: | $250,000 | (Dollar Amount) |

\* \* \*

| | | |
|---|---|---|
| Estimated Aggregate Limit: | $365,000 | (Dollar Amount or "Not Applicable") |
| Estimated Plan Period Payroll: | $7,192,905 | (Dollar Amount or "Not Applicable") |

\* \* \*

| | | |
|---|---|---|
| Minimum Aggregate Limit: | $365,000 | (Dollar Amount or "Not Applicable") |

\* \* \*

**APPLICATION OF THE DEDUCTIBLE**

1. This endorsement applies to the workers compensation insurance coverage, the employers liability insurance coverage and the other states insurance coverage provided in this policy.

\* \* \*

3. In consideration of a reduced premium, you have agreed to reimburse us up to the deductible amounts stated in the Schedule for all payments legally required. . . .

\* \* \*

**DEDUCTIBLE – PER ACCIDENT**

5. The per accident deductible amount stated in the Schedule is the most you must reimburse us for indemnity and medical benefits and damages combined, and "Allocated Loss Adjustment Expense" if elected by you, for bodily injury to one or more employees as the result of any one accident or for bodily injury to any one employee as the result of disease.

### DEDUCTIBLE – AGGREGATE LIMIT

**6.** The aggregate limit is the most you must reimburse us for the sum of all indemnity and medical benefits, damages, and "Allocated Loss Adjustment Expense" if elected by you, because of bodily injury by accident or bodily injury by disease for the plan period stated in the Schedule.

The aggregate limit is based on your actual payroll. The estimated aggregate limit stated in the Schedule is an estimate of the aggregate limit based on your estimated payroll stated in the Schedule.

\* \* \*

### YOUR DUTIES AND RESPONSIBILITIES

**13.** All bodily injuries by accident or disease for which you are responsible shall be promptly reported to us for adjustment and payment, regardless of their severity or cost. . . .

We will bill you for any deductible amounts due. You will reimburse us the amount billed within thirty days of our billing.

\* \* \*

### PREMIUM DUE DATE ENDORSEMENT

This endorsement is used to amend:

Section **D.** of Part Five of the policy is replaced by this provision.

### PART FIVE
### PREMIUM

**D. Premium** is amended to read:

You will pay all premium when due. You will pay the premium even if part or all of a workers compensation law is not valid. **The due date for audit and retrospective premiums is the date of billing.**

\* \* \*

### WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

\* \* \*

### PART FIVE-PREMIUM

\* \* \*

E.  **Final Premium**

> The premium shown on the Information Page, schedules, and endorsements is an estimate.  The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy.  If the final premium is more than the premium you paid to us, you must pay us the balance. . . .

* * *

9. At or about the same time the Insurance Policy was issued, on or about November 1, 2013, Grisham also entered into a Deductible Security Agreement ("Security Agreement") with Great American Insurance Company ("GAIC"), the parent company of GAAL.  Under the terms of the Security Agreement, Grisham agreed to provide collateral for its obligations under the Insurance Policy, and GAIC, acting as an agent for GAAL, was given a security interest in the collateral.  Grisham provided collateral in the amount of $219,000 through a line of credit issued by HomePride Bank.  Under the terms of the Security Agreement, this collateral could be drawn down by GAIC if Grisham defaulted, including by failing to pay its obligations under the Insurance Policy.  A copy of the Security Agreement and Letter of Credit is attached to this Complaint and incorporated by reference as Exhibit 2.

10. Under the terms of the Security Agreement, Grisham agreed to replenish the line of credit within 15 days of written notice from GAIC that GAIC had used the collateral. (Exhibit 2).

11. Under the terms of the Security Agreement, Grisham also agreed that GAIC could use the collateral as reimbursement of attorneys' fees incurred as a result of Grisham's default. (Exhibit 2).

12. GAIC assigned the Security Agreement to GAAL on June 24, 2015, conveying all rights in the Security Agreement to GAAL.

13. According to the Insurance Policy, Grisham's estimated premium was $311,123, subject to change after the audit at the conclusion of the policy term. (Exhibit 1).

14. The Insurance Policy contained a per accident deductible of $250,000, with an estimated aggregate limit of $365,000. (Exhibit 1).

15. On or about January 31, 2015, GAAL completed a payroll audit of Grisham and, based on the actual payrolls, revised the Insurance Policy premium upward from $311,123 to $401,181, for a total balance of $90,058 owed by Grisham. Grisham was billed this premium balance but has not paid it. A copy of the Final Premium Audit Billing is attached to this Complaint and incorporated by reference as Exhibit 3.

16. As a result of that audit, GAAL also revised the aggregate deductible limit upward from $365,000 to $451,786. A copy of the Endorsement reflecting changes to the aggregate deductible limit is attached to this Complaint and incorporated by reference as Exhibit 4.

17. Throughout the term of the Insurance Policy, GAAL received and paid out numerous claims. After paying each claim, GAAL billed Grisham to be reimbursed for all claim payments within the per accident deductible, up to the aggregate limit.

18. Beginning on or about August 1, 2014, Grisham failed to reimburse GAAL the full amounts billed. Specifically, Grisham reimbursed GAAL only $32,030.88 of the $340,414.37 it was billed from August 1, 2014, through March 1, 2015, leaving $308,383.49 still owed by Grisham. A summary of amounts billed and paid is attached to this Complaint and incorporated by reference as Exhibit 5.

19. As a result of Grisham's nonpayment of its obligations under the Insurance Policy and default under the Security Agreement, GAIC drew down the $219,000 line of credit. Even

after drawing down the line of credit, Grisham still owed GAAL $89,383.49 to reimburse it for claims it paid within the per accident deductible, up to the aggregate limit. (Exhibit 5).

20. On or about May 27, 2015, as required by the Security Agreement, GAAL sent a demand letter to Grisham by certified mail, advising Grisham it still owed $90,058 in premium and approximately $89,000 to reimburse GAAL for claims paid within the deductible. The letter also notified Grisham that the line of credit had to be replenished within 15 days of Grisham's receipt of the letter. The letter was received by Grisham on June 1, 2015. A copy of the demand letter and certified mail return receipt is attached to this Complaint and incorporated by reference as Exhibit 6.[1]

21. Grisham did not within 15 days replenish, and has not to date replenished, its line of credit.

22. Grisham still owes GAAL $90,058 in premium and $89,383.49 in deductible reimbursement, for a total of $179,441.49, and Grisham has not disputed the amount of that account stated.

## COUNT I
## BREACH OF CONTRACT [Failure to Pay Premium Owed]

For Count I of its Complaint against Grisham, GAAL states and alleges as follows:

23. GAAL incorporates by reference the above paragraphs numbered 1 through 22 inclusive, as though fully set forth herein.

24. GAAL and Grisham were parties to the Insurance Policy, a contract for insurance.

25. The terms of the contract obligated Grisham, among other things, to the following:

---

[1] Exhibit 6 has been redacted to protect the personal and/or health information of Grisham's employees.

      a. To pay final audited premium upon billing.

26. Grisham breached the contract in the following material particulars:

      a. Failed to pay final audited premium upon billing.

27. Due to the breach of contract by Grisham, GAAL suffered economic loss and damages.

28. As a direct result of Grisham's breach of contract, GAAL suffered damages in the amount of $90,058.

WHEREFORE, GAAL demands judgment against Grisham for money damages in the amount of $90,058, and as an account stated, plus interest, and such further relief as the Court deems just and proper.

## COUNT II
## BREACH OF CONTRACT [Failure to Reimburse for Claims Paid within the Per Accident Deductible]

For Count II of its Complaint against Grisham, GAAL states and alleges as follows:

29. GAAL incorporates by reference the above paragraphs numbered 1 through 22 inclusive, as though fully set forth herein.

30. GAAL and Grisham were parties to the Insurance Policy, a contract for insurance.

31. The terms of the contract obligated Grisham, among other things, to the following:

      a. To reimburse claims paid by GAAL within the per accident deductible, up to the final audited aggregate limit, within 30 days of billing.

32. Grisham breached the contract in the following material particulars:

      a. Failed to reimburse GAAL for claims GAAL paid within the per accident deductible, up to the final audited aggregate limit, within 30 days of billing by GAAL.

33. Due to the breach of contract by Grisham, GAAL suffered economic loss and damages.

34. As a direct result of Grisham's breach of contract, GAAL suffered damages in the amount of $89,383.49.

WHEREFORE, GAAL demands judgment against Grisham for money damages in the amount of $89,383.49, and as an account stated, plus interest, and such further relief as the Court deems just and proper.

## COUNT III
## BREACH OF CONTRACT [Failure to Replenish Collateral]

For Count III of its Complaint against Grisham, GAAL states and alleges as follows:

35. GAAL incorporates by reference the above paragraphs numbered 1 through 22 inclusive, as though fully set forth herein.

36. GAIC, the parent company of GAAL, and Grisham were parties to the Security Agreement, a contract providing a security interest in collateral for the Insurance Policy.

37. GAAL was assigned the rights to the Security Agreement.

38. The terms of the contract obligated Grisham, among other things, to the following:

   a. To provide a line of credit as collateral for the Insurance Policy to be used upon default, including for nonpayment of obligations under the Insurance Policy;

   b. To permit the collateral to be used as reimbursement for attorneys' fees incurred by GAAL as a result of Grisham's default; and

   c. To replace the collateral within 15 days of written notice.

39. Grisham breached the contract in the following material particulars:

   a. Failed to replace the line of credit within 15 days of GAAL's written notice.

40. Due to the breach of contract by Grisham, GAAL suffered economic loss and damages.

41. As a direct result of Grisham's breach of contract, GAAL is entitled to damages and attorneys' fees incurred by GAAL.

WHEREFORE, GAAL demands judgment against Grisham for damages in an amount fair and reasonable, for its attorneys' fees, and such further relief as the Court deems just and proper.

## COUNT IV
## BREACH OF CONTRACT [Failure to Timely Report Claims]

For Count IV of its Complaint against Grisham, GAAL states and alleges as follows:

42. GAAL incorporates by reference the above paragraphs numbered 1 through 22 inclusive, as though fully set forth herein.

43. The Insurance Policy required Grisham to promptly notify GAAL in the event of any workplace injury.

44. Specifically, the Insurance Policy stated:

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**

\* \* \*

**PART FOUR YOUR DUTIES IF INJURY OCCURS**

Tell us at once if injury occurs that may be covered by this policy. . . .

\* \* \*

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY POLICY
LARGE DEDUCTIBLE PROGRAM ENDORSEMENT**

\* \* \*

**YOUR DUTIES AND UNDERSTANDING**

**13.** All bodily injuries by accident or disease for which you are responsible shall be promptly reported to us for adjustment and payment, regardless of their severity or cost. . . .

\* \* \*

45. On or about January 6, 2014, a Grisham employee was allegedly injured at work.

46. On information and belief, as a result of the injury in January and after six months of treatment, the employee underwent serious surgery in July 2014.

47. In breach of its duties under the Insurance Policy, Grisham did not notify GAAL about the employee's injury until after the surgery in July 2014.

48. Since being notified of the claim, which has been assigned Claim No. 564-611315, GAAL has paid $7,246 on the claim and has additional monies reserved for anticipated future medical and indemnity payments.

49. Grisham's breach of its duties under the Insurance Policy harmed GAAL's ability to properly adjust the claim, including by preventing GAAL from doing a proper investigation into the compensability of the claim and into potential third-party tortfeasors, and by preventing GAAL from managing the medical costs and treatment.

50. Due to the breach of contract by Grisham, GAAL suffered economic loss and damages.

WHEREFORE, GAAL demands judgment against Grisham for damages in an amount fair and reasonable, and such further relief as the Court deems just and proper.

## COUNT V
## DECLARATORY RELIEF [Failure to Timely Report Claims]

For Count V of its Complaint against Grisham, GAAL states and alleges as follows:

51. GAAL incorporates by reference the above paragraphs numbered 1 through 22 inclusive, as though fully set forth herein.

52. The Insurance Policy required Grisham to promptly notify GAAL in the event of any workplace injury and to cooperate with GAAL in investigating and responding to claims.

53. Specifically, the Insurance Policy stated:

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**

\* \* \*

**PART FOUR YOUR DUTIES IF INJURY OCCURS**

Tell us at once if injury occurs that may be covered by this policy. Your other duties are listed here:

\* \* \*

**2.** Give us or our agent the names and addresses of the injured persons and of witnesses, and other information we may need.

\* \* \*

**4.** Cooperate with us and assist us, as we may request, in the investigation, settlement or defense of any claim, proceeding or suit.

**5.** Do nothing after an injury occurs that would interfere with our right to recover from others.

\* \* \*

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY POLICY LARGE DEDUCTIBLE PROGRAM ENDORSEMENT**

\* \* \*

**YOUR DUTIES AND UNDERSTANDING**

**13.** All bodily injuries by accident or disease for which you are responsible shall be promptly reported to us for adjustment and payment, regardless of their severity or cost. . . .

\* \* \*

54. A Grisham employee was allegedly injured at work on February 22, 2014. This alleged injury was not reported to GAAL until March 17, 2015 (more than a year later), at which time GAAL assigned it Claim No. 564-625193.

55. GAAL has made numerous attempts to contact Grisham to get basic information about the employee and the alleged incident, but Grisham has refused to cooperate and will not return GAAL's calls.

56. Grisham's failure to timely report this claim, and its subsequent breach of its duties to cooperate under the Insurance Policy, have prevented GAAL from being able to adjust this claim.

57. GAAL seeks a declaration that any amounts owed on Claim No. 564-625193 under the workers compensation laws as a result of this alleged workplace accident should be paid by Grisham and not GAAL.

WHEREFORE, Plaintiff Great American Alliance Insurance Company demands judgment against Defendant Grisham Farm Products, Inc., for the following:

A. Damages in an amount fair and reasonable, but at least in the amount of $179,441.49, the total amount of the accounts stated in Counts I and II above;

B. A declaration that it is not liable under the Insurance Policy for any payment of Claim No. 564-625193;

C. Its attorneys' fees and court costs; and

D. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

_/s/ Cynthia M. Juedemann_
| Clark H. Cole | #28668 |
| Cynthia M. Juedemann | #63921 |

Armstrong Teasdale LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
Telephone: 314.621.5070
Fax: 314.621.5065
ccole@armstrongteasedale.com
cjuedemann@armstrongteasdale.com

ATTORNEYS FOR PLAINTIFF